IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **STEVEN B. BROWN,**<br>    Plaintiff<br><br>v.<br><br>**MICHAEL J. ASTRUE,**<br>  **Commissioner of Social Security,**<br>    Defendant | Civil Action No. 2:10cv00043<br><br>**REPORT AND RECOMMENDATION**<br><br>BY: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Steven B. Brown, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Brown protectively filed his applications for DIB and SSI on August 31, 2007, alleging disability as of November 15, 2006, due to a back injury, hip and leg giving out, pain in neck, both shoulders, ribs, hips, left leg, both knees and feet, COPD, asthma and concentration problems. (Record, ("R."), at 92-99, 102-03, 116, 120, 140.) The claims were denied initially and on reconsideration. (R. at 49-51, 57, 58-62.) Brown then requested a hearing before an administrative law judge, ("ALJ"). (R. at 63-66.) The hearing was held on September 24, 2008, at which Brown was represented by counsel. (R. at 25-44.)

By decision dated October 16, 2008, the ALJ denied Brown's claims. (R. at 11-24.) The ALJ found that Brown meets the insured status requirements of the Act through September 30, 2011, for DIB purposes. (R. at 13.) The ALJ also found that Brown had not engaged in substantial gainful activity since November 15, 2006, the alleged onset date. (R. at 13.) The ALJ determined that the medical evidence established that Brown had severe impairments, namely disorders of the spine and mild chronic obstructive pulmonary disease, ("COPD"), but he found that Brown's impairments did not meet or medically equal the requirements for of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-17.)

The ALJ found that Brown had the residual functional capacity to perform light[1] work that did not require more than occasional climbing, stooping, kneeling, crouching and crawling and did not require him to work around irritants, such as fumes, odors, dusts, gases and poor ventilation or work hazards, such as unprotected heights and moving machinery. (R. at 19.) Therefore, the ALJ found that Brown was unable to perform any of his past relevant work. (R. at 22.) Based on Brown's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Brown could perform, including those of an assembler, a laundry worker and a parking garage cashier. (R. at 22-23.) Thus, the ALJ found that Brown was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2011).

After the ALJ issued his decision, Brown pursued his administrative appeals, (R. at 7), but the Appeals Council denied his request for review. (R. at 1-5.) Brown then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Brown's motion for summary judgment filed February 2, 2011, and the Commissioner's motion for summary judgment filed March 4, 2011.

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2011).

## II. Facts

Brown was born in 1963, (R. at 28, 92, 102), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Brown completed the eighth grade and is a licensed plumber. (R. at 28, 126, 190.) He has past relevant work experience as a lead main plumber. (R. at 28-29, 121.)

Andrew V. Beale, a vocational expert, was present and testified at Brown's hearing. (R. at 39-43.) Beale classified Brown's work as a plumber as skilled and heavy[2] work, with skills that were not transferable to the medium[3] work level. (R. at 40.) Beale was asked to consider a hypothetical individual of Brown's age, education and work experience and who had the residual functional capacity to perform light work and who was limited as indicated by the assessment of Dr. William Humphries, M.D. (R. at 40-41, 258-62.) Beale testified that such an individual could not perform Brown's previous work as a plumber, but such an individual could perform unskilled light and sedentary[4] work as long as the individual was given a sit/stand option in order to relieve back pain. (R. at 40-42.) Beale was next asked to consider the same individual, but who experienced

---

[2] Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If an individual can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.927(d) (2011).

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2011).

[4] Sedentary work involves lifting up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.927(a) (2011).

extreme pain three to four times per week, which prevented him from getting out of bed except to take care of his basic needs, as described in Brown's testimony. (R. at 42.) Beale testified that such an individual could not be competitively employed. (R. at 42.) Beale was asked to consider the same individual, but who was limited as indicated in the assessment of physician's assistant, Patricia Gilhuly, P.A.C. (R. at 42-43, 304-05.) Beale stated that the individual could perform the jobs previously identified. (R. at 43.)

In rendering his decision, the ALJ reviewed records from Campbell County Public Schools; Carilion Roanoke Memorial Hospital; Professional Therapies of Roanoke, Inc.; Village Family Physicians, Inc.; Dr. William Humphries, M.D.; Dr. Robert McGuffin, M.D., a state agency physician; and Dr. Richard Surrusco, M.D., a state agency physician. Brown's attorney also submitted medical records from Carilion Roanoke Memorial Hospital to the Appeals Council.[5]

Records from Professional Therapies of Roanoke, Inc., reflect that Brown was evaluated on November 22, 2006, and was recommended to undergo 12 sessions of physical therapy with the goal of alleviating his back pain. (R. at 192-200.) On January 10, 2007, Brown reported that he was ready to return to work and requested discharge. (R. at 197.) It was noted on discharge, that in six scheduled visits, Brown had been a no show for one appointment and had four cancellations. (R. at 197.) It was reported that, if Brown would attend physical therapy consistently, his overall flexibility and strength would improve. (R. at 197.) During

---

[5] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-5), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

his treatment period, Brown reported that his lumbar condition had improved. (R. at 197.) On February 15, 2007, x-rays of Brown's lumbar spine showed minimal multilevel degenerative disc disease. (R. at 239.)

Brown saw Dr. Janice E. Luth, M.D., at Village Family Physicians, Inc., on February 23, 2007. (R. at 222-23.) Brown reported that his back was feeling better. (R. at 222.) Dr. Luth noted that she had released Brown to return to full-duty light work on January 30, 2007. (R. at 222.) However, Brown stated that once he was released to return to work he was laid off. (R. at 222.) Brown reported that he had a reoccurrence of back pain while carrying groceries. (R. at 222.) X-rays of Brown's back were essentially normal with some minimal degenerative changes shown as tiny marginal osteophytes. (R. at 223.) Dr. Luth diagnosed recurrent left low back and left leg pain. (R. at 223.) Dr. Luth recommended an MRI and prescribed medication for pain and muscle relaxation. (R. at 223.) On June 13, 2007, an MRI of Brown's lumbar spine revealed minimal disc bulging, mild degenerative disc pathology at the L3-L4 and L4-L5 levels and some neural foraminal narrowing at the L4-L5 level. (R. at 202, 250-51.) On July 13, 2007, and August 9, 2007, Brown received epidural steroid injections in the L4-L5 level. (R. at 203-09.) On October 12, 2007, Brown complained of back pain with some swelling. (R. at 253.) Dr. Luth reported that Brown seemed "much more alert" than he was at the last office visit. (R. at 253.) She reported that the last time she saw him he had taken "entirely too many … [V]alium." (R. at 253.) She reported that she would not prescribe Valium again. (R. at 253.)

Brown was seen in the emergency room at Carilion Roanoke Memorial Hospital on August 28, 2007, due to an exacerbation of lower back pain with

radicular leg symptoms. (R. at 212-18.) Straight leg raising tests were negative bilaterally; there was no spinal tenderness; and Brown exhibited intact sensation and reflexes and 5/5 strength in both lower extremities. (R. at 213-14.) X-rays of the thoracic and lumbar spines showed no fracture or other acute abnormality. (R. at 214.) Mild degenerative disc disease was reported, and vertebral height and alignment appeared normal. (R. at 217.) There was no wheezing, rales or rhonchi on examination, and chest x-rays showed clear lungs with no evidence of infiltrate, pneumothorax or acute pulmonary disease. (R. at 213, 216.) Brown was diagnosed with acute exacerbation of low back pain, radicular syndrome of the legs and an unspecified disc disorder. (R. at 215.) On April 15, 2008, Brown presented to the emergency room stating that he fell and injured the right side of his neck, shoulder, back and left hip. (R. at 272-80.) X-rays of Brown's left hip were normal. (R. at 278, 306.) X-rays of Brown's thoracic and lumbar spines were normal. (R. at 279-80, 307-08.)

On September 5, 2006, Dr. Todd H. Dehli, M.D., saw Brown for complaints of right wrist pain, chronic back pain, gastroesophageal reflux disease, shortness of breath with activity and foot pain with numbness. (R. at 236-37.) An x-ray of Brown's wrist was normal. (R. at 242.) Dr. Dehli diagnosed de Quervain[6] tenosynovitis[7] of the right wrist. (R. at 237.) On November 15, 2006, Brown reported that he injured his back at work. (R. at 233.) Dr. Dehli reported that Brown had marked trapezius muscle spasm and tightness, as well as paraspinal

---

[6] de Quervain's disease is defined as fibrosis of the sheath of a tendon of the thumb. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 220 (1995.)

[7] Tenosynovitis is defined as inflammation of a tendon and its enveloping sheath. *See* Stedman's at 823.

muscle tightness. (R. at 233.) Brown also had decreased range of motion. (R. at 233.) On November 21, 2006, Dr. Dehli diagnosed marked lower back spasms. (R. at 232.) On December 8, 2006, Brown reported that his back was feeling better but was "quite tight." (R. at 230.) He was diagnosed with asthmatic bronchitis and low back strain/sprain with spasm. (R. at 230.) On December 14, 2006, Brown reported that he was feeling much better, but still had a lot of wheezing, gurgling and shortness of breath. (R. at 229.) Chest x-rays were normal. (R. at 240.) He was diagnosed with asthmatic bronchitis and low back strain/sprain. (R. at 229.)

On January 23, 2007, Dr. Dehli recommended that Brown return to light-duty work with no lifting of items weighing greater than 15 pounds. (R. at 226.) On January 30, 2007, Brown requested to be released to full-duty work. (R. at 225.) Dr. Dehli reported that Brown's low back pain had improved, and he released Brown to full-duty work. (R. at 225.) On February 13, 2007, Dr. Dehli saw Brown for complaints of left lower back, hip and leg pain. (R. at 224.) On August 30, 2007, Brown's speech was a "little slurred." (R. at 219.) He was slow to answer questions, but did so correctly. (R. at 219.) Dr. Dehli diagnosed low back pain with progressively worsening conditions. (R. at 220.) X-rays of Brown's lumbar spine showed some L5-S1 foraminal narrowing and some facet changes. (R. at 224.) Dr. Dehli discontinued treatment of Brown with Lortab, citing concerns with its addictiveness. (R. at 220, 255.) Dr. Dehli noted that Brown was significantly deconditioned and losing functionality. (R. at 220, 255.)

On June 22, 2007, Brown saw Dr. Eben Alexander III, M.D., for back pain. (R. at 248-49.) Dr. Alexander reported that Brown had significant tenderness at the L4-L5 level to spinous process palpation and slight tenderness in the sciatic

-8-

notches. (R. at 249.) Straight leg raising tests were negative bilaterally and Brown had normal motor strength. (R. at 249.) An MRI of Brown's lumbar spine showed mild degenerative disc pathology at the L3-L4 level and to a greater extent at the L4-L5 level with some foraminal narrowing on the left at the L4-L5 level. (R. at 250-51.)

On March 27, 2008, Brown was examined by Dr. William Humphries, M.D., at the request of Disability Determination Services. (R. at 258-63.) Brown reported severe pain in his upper and lower back and left knee and bilateral foot pain and restless leg syndrome. (R. at 258.) Brown reported that his pain was made worse by prolonged standing, lifting, bending or using his back. (R. at 258.) Dr. Humphries reported that Brown had some deficits in range of motion of the neck, back, shoulders, hips and knees, as well as some sensory loss in the lower extremities. (R. at 260-61.) Brown's strength in both lower extremities was within normal limits. (R. at 261.) Brown had mild dorsal kyphosis. (R. at 260.) Brown had no scoliosis and no paravertebral muscle spasm. (R. at 260.) Dr. Humphries reported that Brown had mild tenderness to palpation of both shoulders. (R. at 260.)

Dr. Humphries observed Brown getting on and off the examination table without difficulty and further noted that Brown was able to perform fine manipulations adequately. (R. at 260.) Grip strength was rated 5/5 bilaterally. (R. at 260.) Auscultation of Brown's lungs revealed a few scattered rhonchi and slight diminished breath sounds. (R. at 261.) Dr. Humphries diagnosed hypertension, asthmatic bronchitis with mild COPD, post traumatic degenerative joint disease and/or degenerative disc disease of the cervical, thoracic and lumbar spines with

-9-

sciatica on the left; and mild degenerative joint disease of the shoulders, knees, feet and ankles. (R. at 261.) He found that Brown would be limited to standing and/or walking six hours in an eight-hour workday with appropriate breaks. (R. at 261.) He found that Brown also would be limited to sitting six hours in an eight-hour workday. (R. at 261.) Brown would be limited to occasionally lifting items weighing up to 25 pounds and frequently lifting items weighing up to 10 pounds. (R. at 262.) Dr. Humphries also found that Brown could occasionally climb, stoop, kneel, crouch and crawl, but should avoid heights, hazards and fumes. (R at 262.)

On April 14, 2008, Dr. Robert McGuffin, M.D., a state agency physician, opined that Brown had the residual functional capacity to perform light work. (R. at 264-70.) He found that Brown would be limited in his ability to push and/or pull with both his upper and lower extremities. (R. at 265.) He found that Brown could stand, sit and/or walk about six hours in an eight-hour workday with normal breaks. (R. at 265.) Dr. McGuffin found that Brown could occasionally climb, stoop, kneel, crouch and crawl and could frequently balance. (R. at 266.) No manipulative, visual or communicative limitations were noted. (R. at 266-67.) Dr. McGuffin reported that Brown should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation and avoid concentrated exposure to hazards. (R. at 267.) Dr. McGuffin concluded that Brown's statements regarding his condition were partially credible. (R. at 269.)

On July, 7, 2008, Dr. Richard Surrusco, M.D., a state agency physician, opined that Brown has the residual functional capacity to perform light work. (R. at 292-98.) He found that Brown could stand, sit and/or walk about six hours in an eight-hour workday with normal breaks. (R. at 293.) Dr. Surrusco reported that

-10-

Brown's ability to push and/or pull was limited in both his upper and lower extremities. (R. at 293.) He found that Brown could occasionally climb, stoop, kneel, crouch and crawl and could frequently balance. (R. at 294.) No manipulative, visual or communication limitations were noted. (R. at 294-95.) Dr. Surrusco reported that Brown should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation and avoid concentrated exposure to hazards. (R. at 295.) Dr. Surrusco concluded that Brown's statements regarding his condition were partially credible. (R. at 298.)

Physician's assistant Patricia Gilhuly, P.A.C., aided in Brown's treatment at Village Family Physicians, Inc., from September 2006 through October 2007. (R. at 219-37, 252-56.) On September 4, 2008, Gilhuly completed a mental assessment indicating that Brown had a limited, but satisfactory, ability to follow work rules, to relate to co-workers, to understand, remember and carry out detailed and simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 304-05.) She opined that Brown had a seriously limited, but not precluded, ability to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration and to understand, remember and carry out complex job instructions. (R. at 304-05.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*,

461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1250(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 16, 2008, the ALJ denied Brown's claims. (R. at 11-24.) The ALJ determined that the medical evidence established that Brown had severe impairments, namely disorders of the spine and mild COPD, but he found that Brown's impairments did not meet or medically equal the requirements for of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-17.) The ALJ found that Brown had the residual functional capacity to perform light

work that did not require more than occasional climbing, stooping, kneeling, crouching and crawling and did not require him to work around irritants, such as fumes, odors, dusts, gases and poor ventilation or work hazards, such as unprotected heights and moving machinery. (R. at 19.) Therefore, the ALJ found that Brown was unable to perform any of his past relevant work. (R. at 22.) Based on Brown's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Brown could perform, including those of an assembler, a laundry worker and a parking garage cashier. (R. at 22-23.) Thus, the ALJ found that Brown was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Brown argues that the ALJ erred by failing to find that he did not suffer from a severe mental impairment. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-11.) He also argues that the ALJ erred by finding that he had the residual functional capacity to perform light work. (Plaintiff's Brief at 11.) In particular, Brown argues that the ALJ's determination of his residual functional capacity did not include all of the limitations set forth by the state agency physicians and that the ALJ erred by failing to mention these limitations in his decision and why he rejected them. (Plaintiff's Brief at 11-13.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Brown argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief at 8-11.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2011). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2011). The Fourth Circuit held

-14-

in *Evans v. Heckler,* that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The ALJ noted that he considered the September 4, 2008, assessment signed by physician's assistant Gilhuly and that he was not giving it significant weight because it lacked consistency with and support from the other evidence of record. (R. at 16.) The ALJ also noted that Brown had no history of psychiatric hospitalization and only reported taking antidepressants for treatment of pain. (R. at 16.) There is no documented history of mental health treatment contained in the record. (R. at 16.) There is no evidence in the record that Brown was referred to a mental health specialist. (R. at 16.) Brown retained the ability to interact appropriately with others. (R. at 213, 261, 276.) In March 2008, Dr. Humphries found Brown alert and oriented with appropriate behavior, affect and grooming; normal thought and idea content; intact recent and remote memory; and normal intelligence. (R. at 261.) Medical reports also indicate that Brown interacted appropriately with emergency room examiners. In August 2007, it was reported that Brown was alert, oriented, responded appropriately to questions and spoke clearly. (R. at 213.) Similarly, in April 2008, Brown had clear speech, was oriented and responded appropriately to questions. (R. at 276.) Furthermore, the ALJ noted Brown's activities. (R. at 16.) Brown reported that he interacted with others, went shopping with his wife, talked on the telephone, watched racing and football with a friend and played video games. (R. at 133-34, 154-55.) Based on this, I find that

-15-

the ALJ did not err in failing to find that Brown suffered from a severe mental impairment.

Brown further argues that the ALJ erred by finding that he had the physical residual functional capacity to perform light work. (Plaintiff's Brief at 11.) In particular, Brown argues that the ALJ's determination of his residual functional capacity did not include all of the limitations set forth by the state agency physicians and that the ALJ erred by failing to mention these limitations in his decision and why he rejected them. (Plaintiff's Brief at 11-13.)

The ALJ found that Brown had the residual functional capacity to perform light work that did not require more than occasional climbing, stooping, kneeling, crouching and crawling, that did not require him to work around irritants, such as fumes, odors, dusts, gases and poor ventilation or work hazards such as unprotected heights and moving machinery. (R. at 19.) In making this finding, the ALJ generally accepted the opinions of the state agency physicians, but adopted the limitations described by Dr. Humphries, who actually examined Brown. (R. at 21-22.) The state agency physicians found that Brown was limited in his ability to push and pull with his upper and lower extremities. (R. at 265, 293.) While the ALJ did not specifically note that the state agency physicians placed these limitations on Brown, he did note that examinations of Brown did not reflect significantly decreased strength or range of motion of the lower extremities. (R. at 20, 213-14, 249, 261.) The ALJ also noted that there was no objective evidence of any abnormality of either upper extremity. (R. at 20.) Brown was reported to have full range of motion of his hands and fingers and normal grip strength bilaterally. (R. at 20, 260.)

-16-

The medical evidence shows only mild degenerative disc disease and spinal impairment. In January 2007, Brown was released to return to full-duty work by Drs. Dehli and Luth. (R. at 222, 225.) A February 2007 x-ray showed only minimal degenerative disc disease. (R. at 239.) Dr. Alexander reported that Brown's MRI findings were quite minimal with only a slight bulging disc at the L4-L5 level that could have been compressing the exiting left- sided nerve root. (R. at 249.) In August 2007 an x-ray of Brown's lumbar spine showed minimal degenerative disc disease with relatively normal lumbar vertebral height and alignment and only a suggestion of a pars defect at the L5-S1 level. (R. at 217-18.) An x-ray of Brown's thoracic spine showed normal vertebral height and alignment and only mild degenerative disc disease. (R. at 217-18.) In April 2008, x-rays of Brown's thoracic spine showed mild degenerative change, and an x-ray of Brown's lumbar spine was unremarkable. (R. at 279-80, 307-08.)

For all of these reasons, I find that substantial evidence exists in the record to support the ALJ's residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding that Brown did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the Commissioner's finding with regard to Brown's residual functional capacity; and

-17-

3. Substantial evidence exists to support the Commissioner's finding that Brown was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Brown's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to

the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: August 25, 2011.

*s/ Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

